# CHICAGO LIFE INSURANCE COMPANY *v.* NEEDLES, Auditor.

### IN ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

Argued January 29, 1885.—Decided March 2, 1885.

When the final judgment of a State court necessarily involves an adjudication of a claim, made therein, that a statute of the State is in derogation of rights secured to a party by the Constitution, this court has jurisdiction of the cause in error, although the State court did not in terms pass upon the point.

A grant of corporate franchises is necessarily subject to the condition that the privileges and franchises conferred shall not be abused ; or employed to defeat the ends for which they were conferred ; and that when abused or misemployed, they may be withdrawn by proceedings consistent with law.

A corporation is subject to such reasonable regulations, as the legislature may from time to time prescribe, as to the general conduct of its affairs, serving only to secure the ends for which it was created, and not materially interfering with the privileges granted to it.

The establishment against a corporation, before a judicial tribunal, in which opportunity for defence is afforded, that it is insolvent; or that its condition is such as to render its continuance in business hazardous to the public, or to those who do business with it; or that it has exceeded its corporate powers; or that it has violated the rules, restrictions, or conditions prescribed by law; constitute sufficient reason for the State which created it to reclaim the franchises and privileges granted to it.

An adjudication by a competent tribunal, after full opportunity for defence, that a corporation against which the foregoing grounds have been established, shall no longer enjoy its corporate franchises and privileges, does not deprive it of its property without due process of law, or deny to it the equal protection of the laws.

The facts are stated in the opinion of the court.

*Mr. C. C. Bonney* for plaintiff in error.

*Mr. J. L. High* (*Mr. E. B. Sherman* was with him) for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

By an act of the General Assembly of Illinois, approved February 16, 1865, certain named persons were created a body politic and corporate by the name of the Traveller's Insurance Company, with authority to carry on the business of insuring persons against the accidental loss of life or personal injury sustained while travelling by railways, steamers, and other modes of conveyance. Subsequently, by an act approved February 21, 1867,—the provisions of which were formally accepted by the company—its name was changed to that of the Chicago Life Insurance Company, and it was invested with power to make insurance upon the lives of individuals, and of persons connected by marital relations to those applying for insurance, or in whom the applicant had a pecuniary interest as creditor or otherwise; " to secure trusts, grants, annuities, and endowments, and purchase the same, in such manner, and for such premiums and considerations as the board of directors

or executive committee shall direct." That, as well as the original act, was declared to be a public act, to be liberally construed for the purposes therein mentioned.

A general law of the State, approved March 26, 1869, and which took effect July 1, 1869, entitled "An Act to organize and regulate the business of life insurance," provides (§ 10): "When the actual funds of any life insurance company doing business in this State are not of a net value equal to the net value of its policies, according to the 'combined experience' or 'actuaries' rate of mortality, with interest at four per centum per annum, it shall be the duty of the auditor to give notice to such company and its agents to discontinue issuing new policies within the State until such time as its funds have become equal to its liabilities, valuing its policies as aforesaid. Any officer or agent who, after such notice has been given, issues or delivers a new policy from and on behalf of such company before its funds have become equal to its liabilities as aforesaid, shall forfeit, for each offence, a sum not exceeding one thousand dollars." The same statute requires, among other things, every life insurance company incorporated in Illinois to transmit to the auditor, on or before the first day of March, in each year, a sworn statement of its business, standing, and affairs, in the form prescribed or authorized by law and adapted to its business; empowers that officer to address inquiries to any company in relation to its doings or condition, or to any other matter connected with its transactions, to which it was required to make prompt reply; and makes it his duty to make, or cause to be made, an examination of its condition and affairs, whenever he deems it expedient to do so, or whenever he has good reason to suspect the correctness of any annual statement, or that its affairs are in an unsound condition. The provisions, relating to life insurance companies, incorporated in other States, and doing business in Illinois need not be here examined, or their effect determined.

By another general statute, approved February 17, 1874, in force July 1, 1874, it is provided as follows:

" Sec. 1. If the auditor of State, upon examination of any insurance company incorporated in this State, is of the opinion

that it is insolvent, or that its condition is such as to render its further continuance in business hazardous to the insured therein, or to the public, or that it has failed to comply with the rules, restrictions or conditions provided by law, or has exceeded, or is exceeding its corporate powers, he shall apply by petition to a judge of any Circuit Court of this State to issue an injunction, restraining such company, in whole or in part, from further proceeding with its business, until a full hearing can be had, or otherwise, as he may direct. It shall be discretionary with such judge, either to issue said injunction forthwith, or to grant an order for such company, upon such notice as he may prescribe, to show cause why said injunction should not issue, or to cause a hearing to be had on complaint and answer, or otherwise, as in ordinary proceedings in equity, before determining whether an injunction shall be issued. He may in all such cases make such orders and decrees, from time to time, as the exigencies and equities of the case may require, and in any case, after a full hearing of all parties interested, may dissolve, modify or perpetuate such injunction, and make all such orders and decrees as may be needful to suspend, restrain or prohibit the further continuance of the business of the company."

" SEC. 5. When the charter of any such insurance company expires, is forfeited, or annulled, or the corporation is restrained from further prosecution of its business, or is dissolved, as hereinbefore provided, the court, on application of the auditor, or of a member, stockholder or creditor, may, at any time before the expiration of said two years, appoint one or more persons to be receivers, to take charge of the estate and effects of the company, including such securities as may be deposited with the auditor or treasurer of State, and to collect the debts due, and property belonging to it, with power to prosecute and defend suits in the name of the corporation, or in their own names, to appoint agents under them, and do all other acts necessary for the collection, marshalling and distributing of the assets of the company, and the closing of its concerns ; and, when necessary for the final settlement of its unfinished business, the powers of such receivers may be continued as long as the court deems necessary therefor."

" SEC. 9. The mode of summoning parties into court, the rules of practice, course of procedure, and powers of courts, in cases arising under this act, shall be the same as in ordinary proceedings in equity in this State, except as herein otherwise provided."

Under the authority conferred by the latter statute the auditor caused an examination to be made, by the chief clerk of the insurance department of the State, into the condition of this company. That officer reported that it had been doing a losing business for several years, was insolvent within the meaning of the statute, and that immediate steps should be taken to appoint a receiver, to the end that the affairs of the company be wound up as quickly as possible, as being for the best interests of its policy-holders. As the result of that examination, the present proceedings were commenced by the auditor in the Circuit Court of Cook County under the said act of 1874. The petition filed by him shows that, in his opinion, the condition of the company rendered its further continuance in business hazardous to the insured. He prayed that the company be enjoined from further prosecuting its business; that a receiver be appointed to take charge of its real estate and effects; and that such other relief be granted as should be meet. An injunction was issued, and a receiver appointed, with authority to take possession of the property of the company, the latter being directed to execute all conveyances necessary to vest in him full title to all its property, assets and choses in action. The company, by its answer, put the plaintiff on proof of all the material allegations of the petition. At the final hearing, it moved the court, upon written grounds, for a final decree in its behalf; one of which was, that the statutes of the State, under which these proceedings were had, were in violation of the Constitution of the United States, in that they impaired the obligation of the contract between the State and the company, as well as of the contracts between the company and its policy-holders and creditors.

This motion was denied, and a final judgment rendered perpetually enjoining the company from further prosecution of its business. From that judgment a writ of error was prose-

cuted to the Supreme Court of the State, where, among other things, was assigned for error the refusal of the court of original jurisdiction to adjudge that the said statutes of Illinois were in violation of the Constitution of the United States. The judgment of the inferior court was, in all things, affirmed by the Supreme Court of the State, and from that judgment of affirmance the present writ of error is prosecuted.

The Supreme Court of Illinois did not, in terms, pass upon the claim distinctly made there, as in the court of original jurisdiction, that the statutes in question were in derogation of rights and privileges secured to appellant by the Constitution of the United States. But the final judgment necessarily involved an adjudication of that claim; for, if the statutes upon the authority of which alone the auditor of state proceeded, are repugnant to the National Constitution, that judgment could not properly have been rendered. This court, therefore, has jurisdiction to inquire whether any right or privilege protected by the Constitution of the United States, has been withheld or denied by the judgment below. And our jurisdiction is not defeated, because it may appear, upon examination of this federal question, that the statutes of Illinois are not repugnant to the provisions of that instrument. Such an examination itself involves the exercise of jurisdiction. The motion to dismiss the writ of error upon the ground that the record does not raise any question of a federal nature must, therefore, be denied.

The case upon the merits, so far as they involve any question of which this court may take cognizance, is within a very narrow compass. The main proposition of the counsel is that the obligation of the contract which the company had with the State, in its original and amended charter, will be impaired, if that company be held subject to the operation of subsequent statutes, regulating the business of life insurance and authorizing the courts, in certain contingencies, to suspend, restrain, or prohibit insurance companies incorporated in Illinois from further continuance in business. This position cannot be sustained, consistently with the power which the State has, and, upon every ground of public policy, must always have, over

corporations of her own creation. Nor is it justified by any reasonable interpretation of the language of the company's charter. The right of the plaintiff in error to exist as a corporation, and its authority, in that capacity, to conduct the particular business for which it was created, were granted, subject to the condition that the privileges and franchises conferred upon it should not be abused, or so employed as to defeat the ends for which it was established, and that, when so abused or misemployed, they might be withdrawn or reclaimed by the State, in such way and by such modes of procedure as were consistent with law. Although no such condition is expressed in the company's charter, it is necessarily implied in every grant of corporate existence. *Terrett* v. *Taylor*, 9 Cranch, 43, 51; Angell & Ames on Corporations, 9th Edit. § 774, note.

Equally implied, in our judgment, is the condition that the corporation shall be subject to such reasonable regulations, in respect to the general conduct of its affairs, as the legislature may, from time to time, prescribe, which do not materially interfere with or obstruct the substantial enjoyment of the privileges the State has granted, and serve only to secure the ends for which the corporation was created. *Sinking Fund Cases*, 99 U. S. 68, 70; *Commonwealth* v. *Farmers' & Mechanics' Bank*, 21 Pick. 542; *Commercial Bank* v. *Mississippi*, 4 Sm. & Marsh. 497, 503. If this condition be not necessarily implied, then the creation of corporations, with rights and franchises which do not belong to individual citizens, may become dangerous to the public welfare through the ignorance, or misconduct, or fraud of those to whose management their affairs are intrusted. It would be extraordinary if the legislative department of a government, charged with the duty of enacting such laws as may promote the health, the morals, and the prosperity of the people, might not, when unrestrained by constitutional limitations upon its authority, provide, by reasonable regulations, against the misuse of special corporate privileges which it has granted, and which could not, except by its sanction, express or implied, have been exercised at all.

In the present case it is claimed by the State that the Chicago Life Insurance Company was never solvent at any time after

its original organization; that only ten per cent. of its authorized capital stock was ever paid in; that stock subscription notes, representing unpaid subscriptions, were ingeniously made payable on demand, with interest after such demand, and that no demand having been made, no interest accrued; that, nevertheless, the verified reports of the company to the State indicated that its capital stock was fully paid up in cash, thus leading the public and the insured to believe that the stock was paid up and invested in interest-bearing securities; that large dividends were annually paid to stockholders from the earnings of the company, which, consistently with an honest exercise of its franchises and privileges, and with its duty to policy-holders, should not have been paid; that interest upon collateral securities deposited by stockholders owing subscriptions was received by the stockholders themselves; that the annual dividends paid to stockholders were in direct violation of the company's by-laws; that the annual reports to the auditor scheduled large amounts of assets and securities as the property of the corporation, when, in fact, they were the property of individuals; that such reports falsely magnified the receipts of the company and misstated its disbursements; and that its last annual report included, among its securities, about $80,000 of mortgages which were not the property of the company. These statements, counsel for the State claim, are fully sustained by the evidence in the cause, while counsel for the company, with equal emphasis, contends that the showing made is all that could be desired in a corporation managed by careful, honest directors.

We express no opinion as to the correctness of either of these opposing views; for, they refer to matters that do not necessarily involve the validity of the statutes which, it is contended, violate the National Constitution; they relate only to the manner in which the company has exercised its corporate powers, and do not involve any question of a federal nature. It is not competent, under existing laws, for this court to inquire whether the State court correctly interpreted the evidence as to the company's insolvency; nor whether the facts make a case which, under the statute of 1874, required or permitted a judgment perpetually enjoining it from doing any further busi-

ness. · We are restricted by the settled limits of our jurisdiction to the specific inquiry, whether the statutes themselves, upon which the judgment below rests, impair the obligation of any contract which the company, or its policy-holders, had with the State, or infringe any right secured by the National Constitution. *Railroad Co.* v. *Rock,* 4 Wall. 177, 180; *Knox* v. *Exchange Bank,* 12 Wall. 379, 383. It is only as bearing upon the question of the power of the State—without any express reservation to that end having been made in the charter of the company—to subject it to such regulations as those established by the act of 1869, or to compel it to cease doing business when the circumstances exist which are set out in the act of 1874, that we have referred to, the facts which counsel for the State contend are fully established by the evidence. If the State had no such power, then the statutes under which she proceeds would impair the contract which the company had with her by its charter. ﹑ But can it be possible that the State, which brought this corporation into existence for the purpose of conducting the business of life insurance, is powerless to protect the people against it, when—assuming, as we must, the facts to be such as the judgment below implies—its further continuance in business would defeat the object of its creation, · and be a fraud upon the public, and on its creditors and policy-holders? Did the company, by its charter, have a contract that it should, without reference to the will of the State, or the public interests, exercise the franchises granted by the State after it became insolvent and consequently unable to meet tne obligations which, as a corporation, under the sanction of the State, it had assumed to its policy-holders? Our answer to these questions is sufficiently indicated by what has been said. The act of 1869 does not contain any regulation respecting the affairs of any corporation of Illinois which is not reasonable in its character, or which is not promotive of the interests of all concerned in its management. It only guards against mismanagement and misconduct; its requirements constitute reasonable regulations of the business of such local corporations; it does not impair the obligation of any contract which this company had with the State; the conditions imposed upon the

rights of the company to continue the issuing of policies are neither arbitrary nor oppressive.

The same general observations apply to the act of 1874, which, recognizing the contract right of the company to carry on business as a corporation, does not, by a legislative decree merely, based upon the *ex parte* representations of public officers, assume to withdraw that right. There is no denial, as counsel supposes, of the equal protection of the laws, nor any deprivation of property without due process of law; for, that statute authorizes a public officer to bring the company before a judicial tribunal, which, after full opportunity for defence, may determine whether it is insolvent, or its condition such as to render its continuance in business hazardous to the insured or to the public, or whether it has exceeded its corporate powers, or violated the rules, restrictions or conditions prescribed by law; grounds which, if established, constitute sufficient reason why the corporate franchises and privileges granted by the State should be no longer enjoyed. *Terrett* v. *Taylor, ubi supra;* 2 Kent's Com. 304, 312; *Slee* v. *Bloom,* 5 Johns. Ch. 366, 379; *Commonwealth* v. *Farmers' & Mechanics' Bank,* 21 Pick. 542. See also Angell & Ames on Corporations, § 774 and note, 9th Ed. That a suit, for such purposes, might be instituted if, in the opinion of the auditor of state, any of those grounds existed, affords no justification to characterize this proceeding as harsh or arbitrary; for, at last, the final judgment of the court must depend upon the facts as established by competent evidence, and not upon the mere opinion of that officer. Indeed, the existence of such an opinion, upon the part of that officer, as a condition of his right to institute the proceedings prescribed by the act of 1874, is in the interest of the corporations embraced by its provisions; for it furnishes some protection against hasty or oppressive action against them.

These views are strengthened by the company's acceptance of the amended charter granted in 1867. The fifth section of that act is in these words: " This act and the act to which this is an amendment shall not be deemed to exempt said company from the operation of such general laws as may be here-

after enacted by the General Assembly on the subject of life insurance." That section may not be equivalent to a reservation of the right of the legislature to alter, amend, or repeal the original charter at pleasure; and, if it be admitted that the company, prior to that amendment, could not have been subjected to the regulations prescribed by the acts of 1869 and 1874, yet it was entirely competent for it to waive—as, by its acceptance of the amended charter, it did waive—any such exemption, and, in consideration of the grant of additional powers, or without any consideration of that character, agree to come under the general laws on the subject of the business in which it was engaged, which did not materially impair its right to carry on that business, or take from it any substantial privilege conferred by the original charter. It took the additional rights given by the act of 1867, subject to the condition imposed by its fifth section.

It is further contended that the State enactments in question impair the obligation of the contracts which the company has made with its creditors and policy-holders. To this it is sufficient to reply, in the language of the court in *Mumma* v. *Potomac Co.*, 8 Pet. 281, 287, where it was said : " A corporation, by the very terms and nature of its political existence, is subject to a dissolution, by a surrender of its corporate franchises, and by a forfeiture of them for wilful misuse and non-use. Every creditor must be presumed to understand the nature and incidents of such a body politic, and to contract with reference to them. And it would be a doctrine new in the law, that the existence of a private contract of the corporation should force upon it a perpetuity of existence, contrary to public policy, and the nature and objects of its charter." The contracts of policy-holders and creditors are not annihilated by such a judgment as was rendered below ; for, to the extent that the company has any property or assets, their interests can be protected, and are protected by that judgment. The action of the State may or may not have affected the intrinsic value of the company's policies ; that would depend somewhat on the manner in which its affairs have been conducted, upon the amount of profits it has realized from business, and upon its act-

ual condition when this suit was instituted; but the State did not, by granting the original and amended charter, preclude herself from seeking, by proper judicial proceedings, to reclaim the franchises and privileges she had given, when they should be so misused as to defeat the objects of her grant, or when the company had become insolvent so as not to be able to meet the obligations which, under the authority of the State, it had assumed to policy-holders and creditors.

The whole argument in behalf of the company proceeds upon the erroneous assumption that this court has authority to determine whether the facts make a case under the statutes of 1869 and 1874, and if it be found they did not, that it must enforce the right of the company to continue in business, despite the final judgment to the contrary by the courts of the State which created it; whereas, we have only to inquire whether the statutes in question impair the obligation of any contract which the company has with the State, or violate any other provision of the National Constitution. Being of opinion that they are not open to any objection of that character, the judgment must be affirmed without any reference to the weight of the evidence upon any issue of fact made by the pleadings.

*Judgment affirmed.*