## JOHN REED ET AL. *v.* GETTYSBURG B.-F. M. ASS'N ET AL.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS OF ADAMS COUNTY, IN EQUITY.

Argued June 5, 1889—Decided June 28, 1889.

[To be reported.]

1. The legislature has the right, necessarily implied in a grant of corporate existence, to prescribe from time to time reasonable regulations for the conduct of the corporate affairs, provided such regulations serve to secure the ends for which the corporation was created, and do not materially interfere with its enjoyment of the rights granted.

2  The Gettysburg Battle-Field Memorial Association, incorporated by act of April 30, 1864, P. L. 670, is a quasi public corporation, created solely for the public benefit; and its ownership and control of the battlefield are subject to the right of the commonwealth to designate the true positions of her troops in the battle, and to mark the same by suitable monuments.

3. The determination of the proper site on said battlefield for a monument marking the position of a Pennsylvania command, to be erected under the act of June 15, 1887, P. L. 408, is vested by that act in the commissioners appointed thereunder, acting in conjunction with the survivors of such command; and their decision is not subject to revision and reversal by said association.

4. Equity will enjoin, as unwarranted and obstructive of the design of the act of June 15, 1887, the refusal of the association to permit a suitable monument, intended to mark the position of a Pennsylvania regiment in the battle, to be erected upon a site which said commissioners have selected for it, and which accurately represents the true position of such regiment.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 31 May Term 1889, Sup. Ct.; court below, No. 1 January Term 1889, C. P. in Equity.

On January 7, 1889, John Reed, Sylvester Byrne, Frederick Middleton, Julius B. Allen and Charles W. Dewitt, representing the survivors of the 72d Regiment of Pennsylvania Volunteers, filed a bill in equity against the Gettysburg Battlefield Memorial Association, and John P. Taylor, Samuel Harper,

J. P. S. Gobin, John P. Nicholson and R. B. Ricketts, commissioners appointed by the governor of Pennsylvania, under the act of June 15, 1887, P. L. 408.

The bill averred the incorporation of said memorial association by act of April 30, 1864, P. L. 670, and supplement of April 24, 1866, P. L. 1075, certain of its objects being, as stated in the act of incorporation, to preserve the natural and artificial defences of the battlefield of Gettysburg, as they were at the time of the battle, and to erect and encourage others to erect monuments designating the spots of special interest and commemorating the deeds of valor and signal events which render the battle ground illustrious; that the charter of said association was amended by a decree of the Court of Common Pleas of Adams county, April 21, 1885, so as to make the governor of Pennsylvania ex officio president thereof, and to constitute the governors of such other states as should by legislative appropriation contribute funds for the support of the association, ex officio members of the board of directors; that large appropriations to the funds of the association had been made by the state of Pennsylvania at different times; that pursuant to the act of June 15, 1887, making an appropriation for the erection of memorial tablets to mark "the position of each of the commands of Pennsylvania volunteers engaged in the battle of Gettysburg," and providing for the appointment by the governor of five commissioners "to select and decide upon the design and material for such monuments, and to co-operate with five persons representing the survivors of the several regimental organizations or commands of this state, engaged in the said battle, in the location of the said monuments and the selection thereof," the plaintiffs, appointed for that purpose by an association composed of the survivors of said regiment, and the commissioners appointed as aforesaid by the governor, had united in selecting the design and in fixing the location of a monument to be erected upon ground owned by said memorial association, marking the position of said regiment in the battle of Gettysburg; but the said memorial association refused to permit its erection upon said location, and required that it be erected upon another location which would be inconsistent with the facts of history and a libel upon said regiment, by representing it as occupying a

position in the rear of its actual position during the battle. The averments of the bill are fully set forth in the opinion of the Supreme Court, infra. The bill prayed that it be ordered and decreed that the power to select the location of the monument referred to was vested solely in the commissioners appointed by the governor, co-operating with the plaintiffs; that the monument be erected at the place selected by these persons, and that the memorial association be enjoined from preventing its erection and from removing or in any way interfering with it when erected, and for general relief.

To this bill the defendants demurred, upon the ground that the act of June 15, 1887, was no part of the charter of the defendant association, had no relation to it or its grounds, and could not be used to affect its rights to or possession of said grounds, or its right to determine the location of monuments thereon; and that the bill did not state a case entitling the plaintiffs to equitable relief.

The plaintiffs having filed a joinder in demurrer, the court, McClean, P. J., filing no opinion, entered a decree after argument, sustaining the demurrer and dismissing the bill at the cost of the plaintiffs.

Thereupon the plaintiffs took this appeal, specifying that the court erred:

1. In sustaining the demurrer.
2. In not overruling the demurrer.
3. In dismissing the bill.

*Mr. Wm. W. Kerr* and *Mr. Wm. W. Wiltbank* (with them *Mr. J. C. Neely*,) for the appellants:

1. The charter of the defendant association gives it no exclusive right to select sites for monuments, nor any discretion as to the location of landmarks indicating the topographical features of the battle. No power was granted to misrepresent the facts, by erecting monuments indicating untruths and violating historic accuracy. It was meant that the association should erect, and prompt others to contribute, works of art appropriate as memorials not only of heroism but of the very spots on which heroic acts were done. It is bound to permit such contributions. The argument that it may erect them or not as it chooses, or may place them where it sees fit, without

regard to the suitability of the location, is unwarranted by either the spirit or the language of the act of April 30, 1864.

2. But, even were this view of the subject incorrect, the charter of the association was, and always has been, subject to amendment, alteration or annulment by the legislature, the constitutional amendment of 1857 having antedated it by six years. Its property also, is subject to be taken from the association for public uses. The act of June 15, 1887, may be regarded as within the scope of each of these legislative powers. Putting the act of 1864 and that of 1887 together, then, where lies the power to choose the site of the monument? Ultimately, it is clear, in a court of equity. If it be exclusively in the association in the first instance, a chancellor will see that it is not wrongfully, hurtfully or malevolently exercised, and this even independent of the act of 1887.

3. Considering the action of the memorial association in the light of these principles, we contend that equity will enjoin interference with the use of the site selected, because the legislature contemplated that such monuments should be placed upon locations historically precise and accurate. The act of 1864, in providing for the designation of spots of special interest, unmistakably shows this. The act of 1887 makes it equally clear. In providing for memorials to mark the position of each of the Pennsylvania commands engaged in the battle, it obviously meant that the positions to be marked should be those of the commands as engaged in the battle, and that the memorials should indicate the spot where the fighting, of special interest, by any given command took place.

4. But, even were the provisions of the statute less stringent, the plaintiffs would be entitled to the decree prayed for, upon the ground that the association is shown by the bill to be abusing its powers in such a way as to justify a chancellor's interference. The act of 1887, however, constituted the commissioners a tribunal to determine, sitting as a quasi judicial body, for the state, which was a large contributor to the monuments, the questions of location that might be presented to it. The power of selection was by that act committed exclusively to the five commissioners co-operating with the representatives appointed by the survivors of the Pennsylvania volunteers. We submit that the legislature had power to do this.

*Mr. David Wills* (with him *Mr. John M. Krauth* and *Mr. S. McSwope*), for the appellees:

1. By an inspection of the acts of April 30, 1864, and April 24, 1866, and of the amendments to the charter of the defendant association, decreed by the Court of Common Pleas of Adams county on April 21, 1885, it will be seen that this great battlefield is not the property of the state of Pennsylvania, either directly or indirectly. Neither the state nor the defendant commissioners make any claim to the control of it. The commissioners neither have nor claim any authority to appropriate the grounds to the use of any regiment, for its monument, without the consent of the association. This battlefield knows no state, but belongs to all; and Pennsylvania cannot create a commission to locate monument sites, without the concurrence of the battlefield memorial association.

2. The fact that the five commissioners appointed by the governor are made defendants in the bill, shows conclusively that they did not co-operate with the plaintiffs, and defeats the right of the latter to maintain their bill. Without such co-operation the bill cannot be maintained, and no other conclusion can be drawn from the fact that the commissioners are placed in the position of adversaries by the bill, than that they will thus agree to a site only with the consent and concurrence of the battlefield association. Nor are the commissioners any more than mere agents of the state to perform, for a brief period, such supervisory duties as are set out in § 3 of the act of 1887.

3. The act of June 15, 1887, has no reference to or connection with the battlefield association. Its title contains no reference to the act incorporating the association, and it cannot be used in any manner to affect the terms, provisions or grant of powers contained in said act of incorporation: Sections 3 and 6, article III. of the constitution. Nor does the body of the act of 1887, contain any reference to the battlefield association. The title of an act is now deemed a part of it: Penna. R. Co. v. Riblet, 66 Pa. 164; Eby's App., 70 Pa. 311; and if it do not clearly indicate the subject matter, the act is unconstitutional: Cooley's Const. Lim., 177 et seq.; Dorsey's App., 72 Pa. 192; Dewhurst v. Allegheny, 95 Pa. 437; Craig v. First Presb. Church, 88 Pa. 42; Beckert v. Allegheny, 85 Pa. 191.

OPINION, MR. JUSTICE STERRETT:

Appellants aver in their bill that they represent the survivors of the 72d Regiment Pennsylvania Volunteers; that the Gettysburg Battlefield Memorial Association was incorporated by act of April 30, 1864, to hold and preserve the battle-grounds of Gettysburg, on which were fought the actions of first, second, and third days of July, 1863, and the natural and artificial defences, as they were at the time of said battle, and thus, by such preservation and such memorial structures as a generous and patriotic people might aid to erect, to commemorate the heroic deeds, the struggles and the triumphs of their brave defenders; also, to ˙erect and promote the erection of structures and works of art and taste thereon, adapted to designate spots of special interest, to commemorate the great deeds of valor, endurance, and noble self-sacrifice, and to perpetuate the memory of the heroes and the signal events which render those battle-grounds illustrious.

It is also averred that from time to time large sums of money have been appropriated by the legislature in aid of the objects above specified; that by act of June 15, 1887, the sum of $121,500 was specifically appropriated "for the purpose of perpetuating the participation therein, and marking by suitable memorial tablets of bronze or granite, the position of each of the commands of Pennsylvania volunteers engaged in the battle ;" that said act required the governor to appoint five commissioners to select and decide upon the design and material for monuments to mark the position of each Pennsylvania command upon the battlefield, etc.; that in the discharge of said duties the commissioners were required to co-operate with five persons representing the survivors of the several regimental organizations or commands of this state engaged in said battle, etc.

It is further averred that said commissioners were duly appointed, and appellants were duly selected by the survivors of said 72d Regiment to co-operate with them in the discharge of their duties; that after appellants and said commissioners had agreed upon the true position of the regiment on the battlefield, etc., official notice of their action and conclusion was given to said battlefield memorial association, and a suitable monument to mark the spot was procured, etc., but said association would

not permit its erection at the place agreed upon by appellants
and said commissioners, but declared the monument should be
placed at a point 283 feet distant therefrom, and not represent-
ing the position of said regiment on the battlefield, etc.

The prayer is for a decree declaring that the power to select
the location of the monument was vested solely in the five
commissioners, appointed by the governor, co-operating with
appellants ; that the monument be erected at the place chosen
by the commissioners and appellants ; and that the Gettysburg
Battlefield Memorial Association be enjoined from preventing
the erection of said monument at the place so selected, etc.,
and for further relief.

The bill was demurred to on the ground that the act of
1887, above referred to, does not apply to or in any manner
affect said memorial association or its officers, nor does it
justify the selection of a site or location for said monument by
said commissioners and appellants on the ground owned by the
association.

The action of the court in sustaining the demurrer and dis-
missing the bill constitutes the subject of complaint in the sev-
eral specifications of error before us.

The legal effect of the demurrer is to admit the unqualified
truthfulness of every averment of fact that is well pleaded in
the bill.    It admits, among other things, that the commissioners
appointed by the governor co-operated with appellants, the
duly constituted representatives of the 72d Regiment of Penn-
sylvania Volunteers, in determining the position of that regi-
ment on the field during the battle of Gettysburg, and also in
deciding upon a suitable monument or memorial tablet of
bronze, to mark said position and to perpetuate the participa-
tion of the regiment in said battle.    It further admits that
the location thus fixed by the commissioners, in conjunction
with appellants, accurately represents the true position of the
regiment while actively engaged in the battle, and also, that
after being officially notified of such joint action, the memorial
association, appellee, refused to permit the erection of the
monument on the site designated and fixed as aforesaid. .

It was urged, argumentatively, by counsel for appellees, that
inasmuch as the commissioners are made parties defendant in
the bill, their action in the premises was not definitive, but must

have been subject to the approval of the association. No such inference can be legitimately drawn from the pleadings. The only question is whether, assuming all the averments of fact, well pleaded in the bill, to be true, the appellants have presented such a case as entitles them to equitable relief? That is the only question that can properly arise on the demurrer.

The proceedings of the commissioners, as averred in the bill and admitted by the demurrer, were clearly within the scope of the authority vested in them by the act of 1887, under which they were appointed. That being the case, the action of the memorial association, in refusing to recognize their authority in the premises, can only be justified on the ground, virtually assumed by counsel, that the commonwealth, acting through the agency of the commission or otherwise, has no right either to designate the position where any of her regiments specially distinguished themselves during the battle, or, at her own expense, to mark the same by the erection of a suitable monument. We are not prepared to admit the correctness of this proposition. On the contrary, we think it is wholly untenable. It is not in harmony with the purposes evidently intended to be accomplished by and through the memorial association, as expressed in the act incorporating it. Those purposes, as we have seen, were mainly "to hold and preserve the battle-grounds of Gettysburg, . . . . . with the natural and artificial defences, as they were at the time of said battle, and by such perpetuation, and such memorial structures, as a generous and patriotic people may aid to erect, to commemorate the heroic deeds, the struggles, and triumphs of their brave defenders;" and also "to erect, and promote the erection, by voluntary contributions, of structures, and works of art and taste thereon, adapted to designate the spots of special interest, to commemorate the great deeds of valor, endurance," etc.

The people of this commonwealth, through their representatives, saw fit to appropriate a large sum of money for the purpose of designating and, by suitable monuments, marking "spots of special interest" conspicuously occupied by their own regiments while engaged in battle, etc. That was all clearly in furtherance of one of the very objects for which the association, appellee, was incorporated, and not in any manner in violation of any right or authority vested or intended to be exclusively

vested in that corporation. Indeed, it is expressly made its duty to "promote the erection by voluntary contributions, of works of art . . . . . adapted to designate spots of special interest," etc. In view of this and other facts in regard to which there can be no dispute, the action of the association complained of in the bill was obstructive and wholly unwarranted. Unlike other corporations, either public or private, created for profit in connection with the advancement of certain public interests, the association appellee is a quasi public corporation created solely for the public benefit, and not for the profit or advantage of any of its corporators. But, aside from that, there is nothing in any of the provisions of its charter that precluded the legislature from doing what it did. It had undoubted right to prescribe reasonable regulations respecting one or more of the public objects which the corporation was designed to promote and accomplish, provided those regulations were such as tended to secure the ends for which the association was created, and did not materially interfere with the rights and privileges granted by its charter. Every grant of corporate existence necessarily implies "the condition that the corporation shall be subject to such reasonable regulations, in respect to the general conduct of its affairs, as the legislature may from time to time prescribe, which do not materially interfere with or obstruct the substantial enjoyment of the privileges the state has granted, and serve only to secure the ends for which the corporation was created:" Insurance Co. v. Needles, 113 U. S. 574, 580. The provisions of the act of 1887 are clearly within the letter as well as the spirit of this well-recognized principle. There is nothing in any of them of which the appellee has any just reason to complain, as an improper interference, on the part of the commonwealth, with any of the rights and privileges granted by its charter. The provision for a commission to act in conjunction with the survivors of each regiment, etc., was at most a reasonable and proper regulation, tending to secure historical accuracy, and generally in furtherance of one of the purposes for which the association was incorporated, and one that did not improperly interfere with any of its rights and duties.

In view of the facts as presented to us, we think the learned

judge erred in sustaining the demurrer and dismissing the bill.

> Decree reversed and bill reinstated, and it is ordered that the record be remitted for further proceedings, in accordance with equity practice; costs of this appeal to be paid by the appellees.

