Manuel **MERCADO BONETA,** et al., Plaintiffs,

v.

Dr. Elliot M. **FERNANDEZ,** et al., Defendants.

Civil No. 92–1849(SEC).

United States District Court, D. Puerto Rico.

Oct. 25, 1996.

Alberto J. Pérez–Hernández, Law Offices of David Efrón, Río Piedras, PR, for Plaintiffs.

Rafael E. García–Rodón, Hato Rey, PR, José E. O'Neill–Font, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

On June 13, 1995, this Court issued an opinion and order granting the motion to dismiss filed by defendant Patient Compensation Fund Administration ("PCFA"). (Docket # 56). Defendant Dr. Elliot M. Fernández requested a reconsideration of such order. (Docket # 69) Having considered the parties' respective arguments and the applicable law, we proceed to cut the Gordian knot, and hereby **DENY** defendant's motion for reconsideration.

■ In essence, defendant alleges in his motion for reconsideration that the abrogation of the PCFA through Act No. 4 of December 30, 1986 (hereinafter "Act No. 4") impaired his contractual relationship with the PCFA, in violation of the Contracts Clause of the Constitution of the United States. The First Circuit has recently expounded on the standard of review which Courts should apply pursuant to a challenge of a state law under the Contracts Clause. In *McGrath v. Rhode Island Retirement Board*, 88 F.3d 12, 16 (1st Cir.1996), the Court noted:

> In terms, the Contracts Clause prohibits states from passing "any ... Law impairing the Obligation of Contracts." U.S. Const. art. 1, § 10. Though the Framers apparently had in mind only purely private contracts ... the Clause routinely has been applied to contracts between states and private parties.

> Over time, the Supreme Court has devised a tripartite test for use in analyzing alleged impairment of contracts. *See General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 1109, 117 L.Ed.2d 328 (1992). Under this paradigm, a court first must inquire whether a contract exists. If so, a court next must inquire whether the law in question impairs an obligation under the contract. If so, the court then must inquire whether the discerned impairment

can fairly be characterized as substantial. Affirmative answers to these three queries compel a court to abrogate the proposed application of the challenged state law. *Id.*

The Court emphasized a fourth component:

> In an appropriate case the model expands to include an inquiry as to whether the impairment, albeit substantial, is reasonable and necessary to fulfill an important public purpose. *See Energy Reserves Group v. Kansas Power & Light*, 459 U.S. 400, 411–412, 103 S.Ct. 697, 704–05, 74 L.Ed.2d 569 (1983). If so, the challenged law will not be held to infringe rights secured by the Contracts Clause ... Furthermore, when a state is itself a party to a contract, courts must scrutinize the state's asserted purpose with an extra measure of vigilance. *See United States Trust Co. v. New Jersey*, 431 U.S. 1, 25, 97 S.Ct. 1505, 1519, 52 L.Ed.2d 92 (1977). Because this fourth component requires careful judicial scrutiny in all events, it is clear that a state must do more than mouth the vocabulary of the public weal in order to reach safe harbor; a vaguely worded or pretextual objective, or one that reasonably may be attained without substantially impairing the contract rights of private parties, will not serve to avoid the full impact of the Contracts Clause. *McGrath* at 16.

Upon careful review, we find that a contract existed between PCFA and Dr. Fernandez, and that Act No. 4 substantially impaired such contract. The legislature created the PCFA to provide medical malpractice insurance unavailable in the local market. With the creation of the PCFA, private insurers assumed the desirable risks while the PCFA was left with the rest. As time passed, it became an assigned risk pool with the risk being borne by a small number of insurers who not only faced increasing difficulties in obtaining reinsurance but also faced potential capital impairment and insolvency.

In 1986, the PCFA faced serious potential insolvency.[1] The legislature approved Act No. 4 to solve an urgent dilemma which in time would have been fatal to the PCFA.

---

1. Act No. 4, December 30, 1986, Law of Puerto Rico, p. 870 (1986).

The statement of motives of such law reads, in pertinent part:

It has been proven that the Patient's Compensation Fund has serious faults which sooner or later shall make it a totally inoperative system. It does not have an adequate capital structure, so that it lacks the resources to face adverse fluctuations in loss occurrence. The mechanism of the demand which the Fund has to cover operational deficits is inadequate because the law establishes a maximum limit to the additional contribution that can be levied in a fiscal year. On the other hand, if contingencies occur such as a high incidence (even in the case of losses under the $150,000 limit) or high severity, especially in limits between one hundred and fifty thousand ($150,000) and five hundred thousand ($500,000) dollars, the Fund could find itself without adequate resources to absorb its losses. In view of the ascending trend in the incidence and severity of the losses, the postponement of the payment for subsequent fiscal years could only endanger the Fund's operations for said years and bring about the protests of the insured (because of high costs) and the victims who will not receive their payment in time.

From the health professional or institution's point of view, the purpose of the insurance is to enable them to transfer their exposure to losses in exchange for a known premium. Because of the possibility that an additional contribution may be levied, this objective is not achieved through the Patient's Compensation Fund Administration. From the potential victim's point of view the Administration does not mean adequate coverage, since there is no certainty that it will have adequate resources available to pay its losses on time or even belatedly.

Act No. 4 abolished the PCFA, on policy considerations, and replaced it (as well as the Joint Underwriting Association) with a new compulsory Insurer's Syndicate which included all private insurers underwriting insurance in Puerto Rico, except those voluntarily underwriting medical malpractice insurance. In deference to the pending claims before the PCFA, any agency or court by December 30, 1986, (the date Act No. 4 was approved), Act No. 4 provided that these claims, and only these claims, would be transacted by the Insurance Commissioner until their final adjudication. Toward that end, the PCFA's funds, records, equipment and property were transferred to the Office of the Insurance Commissioner.

However, it was never the legislative intent that with said transfer of administrative duties, the Insurance Commissioner could be held liable for the PCFA's financial responsibilities. Indeed, Article 41.070 of Act No. 4 clearly stated that said transfer did not impose upon the Insurer's Syndicate (the PCFA's successor) any financial liability for claims filed against the PCFA.[2]

The Commissioner argues, and this Court agrees, that if the Insurer's Syndicate replaced the PCFA, and, pursuant to Act No. 4, the Syndicate did not assume any financial responsibility for claims filed against the PCFA, it stands to reason, a fortiori, that the Insurance Commissioner cannot be held liable for any claims filed against the PCFA.

Since entitlements and property interest are created, and their scope defined by state law [3], and the duties and obligations delegated to the Insurance Commissioner through Act No. 4 did not include liability regarding claims filed against the PCFA, Dr. Fernan-

---

**2.** Section 3 of Article 41.070 (26 L.P.R.A. Sec. 4107) reads, in pertinent part:

... The active business on the books of the Joint Underwriting Association shall be canceled and the policies shall be remitted to the Syndicate to which the unearned premiums shall be transferred and the reserves and obligations shall be disposed of in the manner prescribed by the Insurance Commissioner. The funds, records, equipment and property used or assigned for the use of the Patient's Compensation Fund Administration shall be transferred to the Office of the Insurance Commissioner, **it being understood that the Syndicate shall not assume financial responsibility for any claims filed against the abolished Patient's Compensation Fund Administration** ... (Emphasis supplied)

**3.** *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

dez has no cause of action against the Insurance Commissioner.

Pursuant to this discussion, the Court concludes that Act No. 4 substantially impaired Dr. Fernández contract with the PCFA. Notwithstanding such impairment, the Court finds that the legislative purpose in enacting Act No. 4 was reasonable and necessary to fulfill an important public purpose. Therefore, defendant's challenge to Act No. 4 must fail.

■ As previously stated, even if a statute works a substantial contractual impairment, states may validly abrogate pre-existing contractual relationships in the exercise of their police power to protect the general welfare. The Supreme Court noted in *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241–242, 98 S.Ct. 2716, 2721, 57 L.Ed.2d 727 (1978):

> It is to be accepted as a commonplace that the Contract Clause does not operate to obliterate the police power of the States. 'It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which in its various ramifications, is known as the police power, is an exercise of the sovereign rights of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals' ... As Mr. Justice Holmes succinctly put the matter in his opinion for the Court in *Hudson Water Co. v. McCarter*, 209 U.S. 349, 357 [28 S.Ct. 529, 531–32, 52 L.Ed. 828] (1908), 'One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject matter.'

The insurance industry has historically been the subject of economic regulation by the several States, and the Commonwealth of Puerto Rico, even to the exclusion of insurer's insolvency proceedings from federal bankruptcy jurisdiction.[4] For protection of the general welfare, the Commonwealth of Puerto Rico has, as have all of the States, enacted a comprehensive scheme to regulate the insurance industry,[5] including the liquidation of insurers.[6] In fact, the First Circuit has recently acknowledged the deference given to the Commonwealth's interest in protecting the general welfare, as it has affirmed the Commonwealth's regulatory scheme for the liquidation of insolvent insurers.[7]

Since all contracts of insurance existing in this jurisdiction are subject to the Commonwealth's regulatory power over the insurance industry,[8] under the Commonwealth's current state of the law, any insurance contract shall be terminated if the insurer becomes insolvent.[9]

These insolvency or liquidation proceedings have been upheld under a constitutional attack based on the Contracts Clause. In 1885 the Supreme Court refused to apply the Contracts Clause to the liquidation proceeding of an insolvent insurer in deference to the state's power to protect the public. In *Chicago Life Ins. Co. v. Needles*, 113 U.S. 574, 582, 5 S.Ct. 681, 684–85, 28 L.Ed. 1084 (1885) the Court noted:

> We are restricted by the settled limits of our jurisdiction to the specific inquiry whether the statutes themselves, upon which the judgment below rests, impair the obligation of any contract which the

---

**4.** *See* McCarran Ferguson Act, 15 U.S.C. §§ 1011–1012; *see also U.S. Department of Treasury v. Fabe*, 508 U.S. 491, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993).

**5.** *See* 26 L.P.R.A. § 101, et seq.

**6.** *See* 26 L.P.R.A. § 4001, et seq.

**7.** *Gonzalez v. Media Elements, Inc.*, 946 F.2d 157 (1st Cir.1991).

**8.** *See* 26 L.P.R.A. § 101, et seq.; *see also PFZ Properties, Inc. v. General Accident Insurance Co.*, 94 J.T.S. 116 (1994).

**9.** *See* Article 40.160 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 4016.

company, or its policy holders, had with the state, or infringe any rights secured by the national constitution . . .

It is only as bearing upon the question of the power of the state-without any express reservation to that end having been made in the charter of the company-to subject it to such regulations as those established by the Act of 1869, or to compel it to cease doing business when the circumstances exist which are set out in the act of 1874, that we have referred to the facts which counsel for the state contend are fully established by the evidence. If the state had no such power, then the statutes under which she proceeds would impair the contract which the company had with her by its charter. **But can it be possible that the state, which brought this corporation into existence for the purpose of conducting the business of life insurance, is powerless to protect the people against it, when assuming ... its further continuance in business would defeat the object of its creation, and be a fraud upon the public, and on its creditors and policy-holders? Did the company, by its charter, have a contract that it should, without reference to the will of the state, or the public, exercise the franchises granted by the state after it became insolvent, and consequently, unable to meet the obligations which, as a corporation, under the sanction of the state, it had assumed to its policy holders?** (Emphasis supplied)

The Supreme Court in *General Motors Corp. v. Romein*, 503 U.S. at 190, 112 S.Ct. at 1111–12, reiterated such reasoning to dismiss a constitutional attack against a state law, pursuant to the Contracts Clause:

... Moreover, petitioner's construction would severely limit the ability of state legislatures to amend their regulatory legislation. Amendments could not take effect until all existing contracts expired, and parties could evade regulation by entering into long-term contracts. . . .

While the existence of this regulation must give rise to the reasonable expectation that insurance contracts are subject to termination in the event of the insurer's insolvency, Dr. Fernández offers no reason of his expectations to the contrary. Despite the Contracts Clause, the Supreme Court has recognized that anyone entering a contractual arrangement over a subject matter under State regulation accepts that said contract is made subject to the paramount power of the State to "safeguard the vital interests of its people." Any expectation to the contrary would be unreasonable, to the extent that it curtails the state's valid exercise of its police power.

In the present case, Dr. Fernández cannot argue that under the Commonwealth's preexisting insurance regulation, the abrogation or liquidation of the PCFA was either prohibited or impossible. Similarly, Dr. Fernández cannot allege that his contract with PCFA precluded the Commonwealth to act in protection of the public interest. Furthermore, nothing prevented Dr. Fernández from obtaining new insurance coverage covering the date of the alleged malpractice. For the reasons stated above, defendant's motion for reconsideration is **DENIED.** (Docket # 69)

**SO ORDERED.**