316 F.3d 26
 MOTORSPORT ENGINEERING, INC., d/b/a Majestic Cars, Ltd., Plaintiff, Appellant,
v.
MASERATI SPA; Maserati North America, Inc., Defendants, Appellees.
Ferrari S.p.A., Auto-Mobiles of New England, Intervenor-Counter-claimant, Appellee.
 No. 02-1082.
 United States Court of Appeals, First Circuit.
 Heard September 5, 2002.
 Decided December 20, 2002.
 
 Louis A. Cassis with whom Cassis, Arena & Cayer, Evan T. Lawson, and Lawson & Weitzen, LLP were on brief for appellant.
 Jason P. Isralowitz with whom Carl J. Chiappa, John J. Sullivan, Gregory S. Shaffer, Sarah Kellogg and Kirkpatrick & Lockhart LLP were on brief for defendants, appellees and intervenor-counter-claimant, appellee.
 Before BOUDIN, Chief Judge, TORRUELLA and LYNCH, Circuit Judges.
 BOUDIN, Chief Judge.
 
 
 1
 This appeal is taken by plaintiff-appellant Majestic Cars, Ltd., a sports car dealer in Cohasset, Massachusetts, from the district court's grant of summary judgment in favor of the defendant-appellees Maserati and Ferrari.[1] The factual background is complicated; less so are the facts needed to resolve the appeal. On an appeal from summary judgment, we review the issues de novo, drawing inferences in favor of the non-moving party. Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir.2002). Here, the facts pertinent to our disposition are not in dispute.
 
 
 2
 In 1986, Majestic entered into an agreement making it a Massachusetts dealer for a famous brand of Italian sports cars called Maserati. At that time, the North American distributor for Maserati was Maserati Automobiles, Inc. ("MAI"); the manufacturer, based in Italy, was Officine Alfieri Maserati S.p.A ("OAM"). Another Italian company — DeTomaso Industries, Inc. ("DTI") — controlled both MAI and OAM, owning all of the former and 85 percent of the latter. In 1989 Majestic renewed the contract; this 1989 agreement is central to this case.
 
 
 3
 In the 1989 contract, the signatories were MAI as distributor and Majestic as dealer. OAM did not sign the contract. However, it did obtain certain rights under the agreement (e.g., a right to damages if Majestic misused the Maserati trademark) and was designated as a third-party beneficiary. The contract had no termination date but provided that it would terminate "immediately" if Maserati vehicle sales ended in the United States, or MAI ceased to be the sole U.S. importer, or MAI's distribution method substantially changed. The parties have assumed on this appeal that Massachusetts law governs the contract.
 
 
 4
 In the late 1980s, Maserati sales in America declined sharply, partly because the cars did not meet U.S. emission and other standards. In 1990, the Maserati factory stopped making cars for the United States. Majestic was able to obtain about ten more cars out of MAI's existing inventory and, apart from that, received only spare parts through MAI. However, Majestic continued to retail spare parts and to hold itself out as a Maserati dealer, hoping that Maserati would one day resume shipments to the United States. For over ten years, Maseratis were not made for the U.S. market.
 
 
 5
 During this period, OAM's assets changed hands in a series of transactions. In 1990, the factory and trademark were transferred to a new company, Maserati S.r.l. ("Maserati I"), partly owned by DTI and partly by a subsidiary of the giant Fiat car making concern. Later, all of the assets passed into the hands of Ferrari S.p.A., itself a famous Italian car manufacturer also controlled by the Fiat enterprise. This new subsidiary, called Maserati S.p.A. ("Maserati II"), began selling Maseratis in the United States in 2002 through its own distributor, Maserati North America, which is also a subsidiary of Ferrari. Majestic was not designated as a Maserati dealer by these new companies and was told to stop holding itself out as an authorized dealership.
 
 
 6
 Majestic then sued Maserati II (the present manufacturer) and Maserati North America (the present distributor) in state court. Pertinently, the complaint asserted claims based on the 1989 contract, the federal Automobile Dealers' Day in Court Act, 15 U.S.C. §§ 1221-1225 (2000), and a Massachusetts statute, Mass. Gen. Laws ch. 93B (2000). Ferrari intervened and counter-claimed against Majestic for trademark infringement. The case was removed to federal district court. On cross motions for summary judgment, the court ruled against Majestic both on its own claims and on Ferrari's counter-claim request for an injunction barring Majestic from using the Maserati name. Motorsport Eng'g, Inc. v. Maserati, S.p.A., 183 F.Supp.2d 209 (D.Mass.2001). Majestic now appeals.
 
 
 7
 Majestic's main claim on this appeal rests on three propositions: that OAM was bound by the 1989 dealership contract, that OAM's obligations were inherited by those who succeeded to OAM's assets, including Maserati I and II, and that the contract gives Majestic the right to continued operation as a Maserati dealer or to damages. The inheritance theory is very dubious (the district court rejected it); and it is also unclear how Majestic would avoid the termination provisions already mentioned. But the cleanest answer to the contract claim (also adopted by the district court) is that OAM was never liable on the contract.
 
 
 8
 OAM was not a signatory to the contract; it was identified explicitly as a third-party beneficiary. Further, the contract went out of its way to say that Majestic's agreement was "solely with MAI" and that Majestic shall "in no event ... have any right of redress against Maserati S.p.A. [as OAM was called in the contract] for failure or delay in delivery." Majestic appears to understand that a non-contracting party is not liable on a contract but it says — in the first of several arguments — that OAM was "in reality" a party to the contract because it was given explicit rights under the contract.
 
 
 9
 This argument rests on a misunderstanding of contract law. A third-party beneficiary is one who is given rights under a contract to which that person is not a party. 13 Williston, Contracts § 37:1, at 9-10 (4th ed. 2000); Flattery v. Gregory, 397 Mass. 143, 489 N.E.2d 1257, 1261 (1986). Obligations under such a contract, including any obligations to third parties, are created by agreement between the signatories (here, Majestic and MAI). If the signatories so intend, a third party can enforce the contract against the signatory so obligated. Restatement (Second) of Contracts § 304 (1981). But the third-party beneficiary, who did not sign the contract, is not liable for either signatory's performance and has no contractual obligations to either. See Farnsworth, Contracts § 10.9, at 773 (1990).
 
 
 10
 Majestic's second argument is that OAM is liable on the contract because MAI was OAM's "agent." The district court rejected any claim that OAM so dominated MAI as to allow Majestic to disregard the corporate form ("piercing the corporate veil") and to hold OAM to be the real contracting party. See, e.g., My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 233 N.E.2d 748, 751 (1968). But at least in this court Majestic disclaims any reliance on veil piercing doctrine and relies instead on agency doctrine. An agent is simply someone who is authorized by the principal to act on the principal's behalf and bind the principal as if the latter were there himself. Restatement (Second) of Agency § 1 (1958).
 
 
 11
 It is quite true that one can contract through an agent and become personally liable; this commonly occurs, for example, in home purchases where a real estate agent may sign the contract "for" the buyer or seller. See, e.g., Fejta v. GAF Cos., 800 F.2d 1395, 1396 (5th Cir. 1986). But there is nothing whatsoever to suggest that MAI was signing the contract "for" OAM — indeed, the disclaimers quoted above show the opposite — and again Majestic misunderstands the law. If OAM had authorized MAI to sign a contract for OAM with Majestic in which OAM promised to supply cars to Majestic, Majestic would have rights against OAM. But there is no indication that OAM ever granted such authority and, if it had, MAI certainly did not exercise it in the 1989 contract, which it signed solely on its own behalf.
 
 
 12
 In support of its agency claim, Majestic stresses that both OAM and MAI were under the control of DTI, that OAM's relationship with MAI was informal, that OAM received fees from MAI and that it could exercise its own rights (as a third-party beneficiary) under the Majestic-MAI contract. Of course in certain ambiguous situations, ties and interconnections of various kinds may be relevant to show agency, just as they may be relevant (in a somewhat different mix and under a different standard) to justify veil piercing. But there is nothing ambiguous or uncertain about this contract: its terms make clear that MAI was a contracting party on its own behalf and OAM was not a party at all.
 
 
 13
 On this appeal, Majestic refers several times to chapter 93B of the Massachusetts General Laws. Chapter 93B is a set of provisions directed at regulating business practices between vehicle manufacturers, distributors and dealers. It contains various prohibitions, some vaguely worded (e.g., a ban on "arbitrary" or "bad faith" actions, Mass. Gen. Laws ch. 93B, § 4(a)) and some quite specific (e.g., required disclosure of the basis for allocating vehicles to dealers, id. § 4(c)(2)). Majestic's appellate briefs make no organized effort to show that it has any claim against anyone for violation of these substantive provisions.
 
 
 14
 Instead, Majestic invokes the "coverage" provision of the statute, which describes the reach of chapter 93B and reads as follows:
 
 
 15
 This chapter shall apply to all actions by a manufacturer or distributor which relate to the franchise relationship and which arise under any written or oral agreement between the manufacturer or distributor with a motor vehicle dealer including, but not limited to, the franchise offering, the franchise agreement, sales of goods, services or advertising, leases or mortgages of real or personal property, promises to pay, security interests, pledges, insurance contracts, advertising contracts, construction or installation contracts, servicing contracts, and all other such agreements in which said manufacturer or distributor has any direct or indirect interest.[2]
 
 
 16
 Mass. Gen. Laws ch. 93B, § 11. Majestic's position, so far as we can tell, is that this provision itself makes OAM (and anyone who inherited its liabilities) liable on the 1989 contract between Majestic and MAI.
 
 
 17
 Admittedly, the quoted provision is remarkably vague in certain respects, but by its own terms it is concerned with applying "this chapter." Majestic, at least on this appeal, points to no substantive provision of chapter 93B breached by OAM. As for Majestic's basic contract claim, nothing in the quoted language, or any case cited to us interpreting it, says that every contract signed by a distributor is automatically a contractual obligation of a non-signing sister company that manufactures the vehicles.
 
 
 18
 The federal statute also relied upon by Majestic creates a federal claim against any automobile manufacturer subject to the act's terms for failing "to act in good faith" in carrying out a franchise agreement with a dealer or in ending such an agreement. 15 U.S.C. § 1222. Both the reach of the federal act and its substantive content present interesting questions but, once again, Majestic makes no effort on appeal to show that the federal statute was violated. It argues only that OAM is subject to the statutory prohibitions and thus leaves uncontested the district court's dispositive finding that none of the defendants acted in bad faith. Finally, at the close of its main brief, Majestic argues in a cursory fashion that Fiat and its Maserati interests benefitted because, during the decade when new Maseratis were not being imported, Majestic helped keep the name and customer loyalty intact by importing parts for existing cars. Majestic says that it expected that it would be retained as a dealer if and when imports resumed and was never told otherwise. These facts, it asserts, give it a claim for quasi-contract or unjust enrichment relief against the Fiat subsidiary that now holds the old OAM assets and manufactures Maseratis.
 
 
 19
 On appeal, Majestic makes no serious effort to develop its quasi-contract or unjust enrichment claims, either by a careful discussion of doctrine or by identifying Massachusetts cases imposing such liability on closely similar facts. Arguments, including those preserved in the district court, are forfeited when presented in an incomplete or perfunctory fashion on appeal. Brandt v. Wand Partners, 242 F.3d 6, 17 (1st Cir.2001).
 
 
 20
 Phrases like "quasi-contract" and "unjust enrichment" are not self-executing; despite evocative labels, these are doctrines with conditions and limitations. Bushkin Assocs., Inc. v. Raytheon Co., 906 F.2d 11, 15-16 (1st Cir.1990). Not every conferral of a benefit creates an implied contract (consider gifts, third-party beneficiaries, parent-child relationships and the vast array of indirect benefits that economists call positive externalities). Nor do such benefits automatically give rise to claims for unjust enrichment. Most automobile dealers make a decent (or more than decent) profit on parts and service; if Majestic was entitled to more, it has not shown us why.
 
 
 21
 
 Affirmed.
 
 
 
 
 Notes:
 
 
 [1]
 Majestic is incorporated as Motorsport Engineering, Inc., but the company does business as Majestic Cars, Ltd. The two original defendants — collectively "Maserati" — were Maserati North America, Inc. and Maserati S.p.A. (the parent company of Maserati North America). Ferrari S.p.A. ("Ferrari") (the parent company of Maserati S.p.A.) intervened as a defendant after the case was removed to federal court
 
 
 [2]
 This section is based on the former section 8 of chapter 93B, which has been revised to read as quoted above. For our purposes, the two sections are effectively identicalSee 2002 Mass. Legis. Serv. Ch. 222, §§ 5, 7 (West).